IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **MICHAEL LATELY, et al.,** | CASE NO. 3:22 CV 1134 |
| Plaintiffs, | |
| v. | JUDGE JAMES R. KNEPP II |
| **SILACAL, INC., et al.,** | |
| Defendants. | MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

Pending before the Court is Defendants' Motion for Summary Judgment. (Doc. 51). The matter is fully briefed and decisional. (Docs. 54, 55). Jurisdiction is proper under 28 U.S.C. § 1332. For the reasons discussed below, the Court grants Defendants' Motion in part and denies it in part. Specifically, the Motion is granted as to Plaintiffs' claim of direct negligence against Defendant Silical, Inc. and Plaintiffs' request for punitive damages. Defendants' Motion is denied as to all other claims.

## BACKGROUND

On the afternoon of June 27, 2020, Plaintiff Michael Lately drove to Detroit, Michigan, to visit family. (Doc. 50-1, at 32). During that visit, he consumed alcohol and smoked marijuana. *Id.* at 34–37. Late that evening, Lately travelled back towards his home in Sandusky, Ohio. *Id.* at 39. He took the Ohio Turnpike; it was dark, rainy, and foggy. *Id.* at 41. Also on the Ohio Turnpike that evening was Defendant Patrick Ferrell, operating a semi-truck on behalf of his employer, Defendant Silacal, Inc. (Doc. 22, at ¶ 9).

Lately eventually entered a construction zone in which the right shoulder was closed for repairs. *See* Doc. 50-5, at 1–3. Within that same construction zone, Ferrell had pulled onto the closed right shoulder so he could urinate. (Doc. 50-5, at 10). Ferrell then reentered traffic, moving from the closed right shoulder into a temporary right lane, and then to the far-left lane. *Id.* at 6–9. The speed Ferrell reached while moving into the leftmost lane is disputed, as is how established his semi-truck was in that lane. But as Farrell reached the leftmost lane, Lately's vehicle collided with the rear of Ferrell's trailer. Lately sustained significant injuries as a result. He now lives as a quadriplegic.

Plaintiffs, Lately and his wife, assert five counts in their Complaint: (1) negligence against Ferrell; (2) vicarious liability against Silacal; (3) negligence against Silacal; (4) loss of consortium against all Defendants; and (5) punitive damages against all Defendants. *See* Doc. 20.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any factual matter in dispute; the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving

2

party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

This Court's jurisdiction is derived solely from the diversity of the parties under 28 U.S.C. § 1332. Thus, this Court must apply the substantive law of Ohio "in accordance with the then-controlling decision of the highest state court." *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998) (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)).

## DISCUSSION

Defendants assert entitlement to judgment on each of Plaintiffs' claims. *See* Doc. 51. But the parties offer competing expert reports, and neither attack the admissibility of opposing experts. As discussed below, the proffered expert reports create a triable issue of fact as to the parties' negligence.

<u>Count One: Negligence</u>

Plaintiffs' first cause of action presents independent theories of both general negligence and negligence *per se*. (Doc. 20, at 3–7). Defendants attack it on two independent grounds. First, Defendants argue Lately's own negligence constitutes an intervening act that serves as the sole proximate cause of his injuries. (Doc. 51, at 18–20; Doc. 55, at 13–14). Second, Defendants argue that even if Ferrell violated a statute or regulation during the events of June 27, those statutes and regulations would establish only a "general duty" insufficient to support a claim of negligence *per se* against Ferrell. (Doc. 51, at 20; Doc. 55, at 13–14).

3

To establish a negligence claim under Ohio law, a plaintiff must show: "(1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant's breach." *Beckemeyer v. Gelco Corp.*, 828 F. App'x 251, 253 (6th Cir. 2020) (quoting *Wallace v. Ohio Dep't of Com.*, 96 Ohio St. 3d 266, 274 (2002)). The existence of a duty is a question of law, and may be established "by common law, legislative enactment, or by the particular facts and circumstances of the case." *Chambers v. St. Mary's Sch.*, 82 Ohio St. 3d 563, 565 (1998) (citation omitted). If a statute or regulation imposes "a specific duty for the safety of others," violation thereof establishes a defendant's breach of the duty to a plaintiff, supporting a finding of negligence *per se*. *Id.* It does not, however, determine whether a defendant's breach was the sole proximate cause of a plaintiff's injuries. *See Pond v. Leslein*, 72 Ohio St. 3d 50, 53 (1995).

*Lately's Negligence*

Defendants first argue Lately's own negligence constitutes an independent, intervening act that breaks the causal chain between any earlier negligence and the resulting harm, requiring Plaintiffs' negligence claim to fail for want of proximate causation. (Doc. 51, at 18–19). They claim Lately's violation of Ohio's assured clear distance ahead rule ("ACDA") constitutes negligence *per se*. This argument requires the Court to, as a matter of law, determine whether Lately's actions constituted negligence *per se* and that such negligence was the sole proximate cause of his injuries. Plaintiffs dispute whether Lately's conduct violated the statute or qualifies as an intervening cause; but they claim it should, if anything, be analyzed only as comparative negligence. (Doc. 54, at 11). As set forth below, because this argument presents factual issues better suited for a jury, summary judgment is inappropriate.

Ohio's ACDA rule prohibits drivers from operating a vehicle "at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead." Ohio Rev. Code §

4

4511.21(A). A driver violates this rule if he "collided with an object which (1) was ahead of him in his path of travel, (2) was stationary or moving in the same direction as the driver, (3) did not suddenly appear in the driver's path, and (4) was reasonably discernible." *Yukech v. California Transp. LLC*, 2023 WL 2374868, at *4 (S.D. Ohio) (quoting *Piper v. McMillian*, 134 Ohio App. 3d 180, 190 (1999)). The parties only dispute elements three and four.

Beginning with the third element, the ACDA will not apply when an object that was not stationary or moving ahead suddenly enters the driver's line of travel from the side. *Pursley v. Est. of Messman*, 2020-Ohio-2985, ¶ 42 (Ct. App.). Defendants assert Ferrell had "established [himself] in the left lane of traffic" with roughly 800 yards worth of distance between his trailer and Lately's car. (Doc. 51, at 19). They rely on the Ohio State Highway Patrol ("OSHP") traffic crash report and the expert report of Kent W. McKee and Matthew Arbour. *See id.*; Doc. 46-3, at 22. Defendants argue this distance was sufficient for Lately to avoid the collision absent his excessive speed and intoxication, meaning any collision between the vehicles in question was a result of Lately's subsequent failure to maintain an ACDA. (Doc. 55, at 8).

Plaintiffs point to Ferrell's own written statement provided to the responding officer, Avery Albright, in which he asserted that, at the time of the crash, he was traveling "[f]rom [the] coned shoulder into traffic." *See* Doc. 50-5 at 10–12. After leaving the scene, Ferrell seemingly contradicted his prior statement by responding in the affirmative to Officer Albright's question of whether he was "completely in the [the left] lane when struck" by Lately. *Id.* at 12.[1] Further, Plaintiffs contend Ferrell "suddenly appeared" in Lately's lane. (Doc. 54, at 12). They rely on expert Dennis Seal who concluded "[d]ue to the unexpected event of the tractor-trailer crossing

---

1. Officer Albright conducted the second interview with Ferrell over the phone after both parties had left the scene of the accident. (Doc. 50-5; Doc. 51, at 5).

5

both lanes of travel, Lately had not fully realized the presence of the tractor-trailer in time to initiate, perform and complete his evasive actions necessary to avoid impact." *Id.* at 16. Plaintiffs also cite data from the airbag control module, which showed Lately steered left to avoid Ferrell 0.5 seconds before impact. *Id.* at 13; *see State v. Chakirelis*, 2010 WL 891338, at *3 (Ohio Ct. App.) ("[T]he other vehicle entered the path of travel in such a fashion that the driver was not 'left with enough forward distance to avoid the collision through the exercise of ordinary care.'") (quoting *State v. Hochstetler*, 2004-Ohio-595, ¶ 14 (Ct. App.)).

While Defendants assert "[a]ll experts agree on the positioning of the vehicles" at the time of impact except for Plaintiffs' expert Seal, such an assertion is misleading at best. *See* Doc. 51, at 19; Doc. 55, at 7. Many of the expert reports Defendants cite do not claim to offer any independent analysis about the position of the vehicles at the time of the collision. *See, e.g.*, Doc. 46-1, at 2 (restating the relevant crash information "according" to the crash report); Doc. 46-2, at 2 (directly citing the crash report for the same information); Doc. 47-1, at 3 (incorporating the crash report's diagram of the incident); Doc. 47-3, at 12–13 (same); Doc. 47-2, at 5 (describing the general facts of the incident "according to" Ferrell's statement to the OSHP). But regardless of whether Ferrell had "established" himself in the left lane prior to the collision, that still leaves unanswered the pertinent question of whether the movement from the shoulder to the left lane was sufficiently "sudden" to intrude on Lately's ACDA. *See Pursley*, 2020-Ohio-2985 at ¶ 42. The parties' dueling expert reports offer conflicting accounts on this point. *Compare* Doc. 47-3, at 13 (concluding, because of Mr. Ferrell's "highly dangerous last second maneuver" into the left lane, there is insufficient evidence to determine whether Lately could have avoided the collision had Lately been traveling at a lower speed) *and* Doc. 47-7, at 9 ("Due to the unexpected event of the tractor-trailer crossing both lanes of travel, Lately had not fully realized the presence of the tractor-trailer in time

6

to initiate, perform and complete his evasive actions necessary to avoid impact."), *with* Doc. 46-3, at 20 (concluding that, had Lately been traveling the posted speed limit, his vehicle never would have reached Ferrell's as it moved from the shoulder to the left lane).

At this stage, Defendants' attempt to undermine the validity of Seal's conclusions bears no weight absent an evidentiary challenge to the admissibility of Seal's report. *See Anderson*, 477 U.S. at 255. Defendants raise no such challenge here. Thus, as a result of the conflicting expert testimony regarding the suddenness of Ferrell's movement into the far-left lane, the Court cannot resolve whether Lately committed an ACDA violation as a matter of law. *See Pentland v. Erin Truckways, LTD.*, 2010 WL 4702313, at *4–5 (N.D. Ohio).

Even if the Court could conclude as a matter of law that Lately's actions constituted an ACDA violation such that he was negligent *per se*, it does not necessarily follow that his actions severed the chain of causation between Ferrell's acts and Lately's injuries. *See Pond*, 72 Ohio St. 3d at 53 (explaining a finding of negligence *per se* answers only questions of breach and duty, and does not address the issues of "comparative negligence, proximate cause, and damages"). "The 'proximate cause' of a result is that which in a natural and continued sequence contributes to produce the result, without which it would not have happened." *Roth v. Tokar Tower Off. Condo Unit Owners' Ass'n*, 2023-Ohio-279, ¶ 17 (Ct. App.) (quoting *Waugh v. Chakonas*, 2011-Ohio-2764, ¶ 8 (Ct. App.)). Typically, questions of proximate cause, including those asking whether a plaintiff's own negligence constituted an intervening cause, involve "a weighing of the evidence" reserved to the jury. *See Cascone v. Herb Kay Co.*, 6 Ohio St. 3d 155, 160 (1983).

In any event, a court may decide the question of proximate causation as a matter of law when, just as with other questions of fact, reasonable minds could not differ in their answer. *See Pursley*, 2020-Ohio-2985, ¶¶ 105–08. Here, reasonable minds could. The court need not consider

7

whether Lately's actions *as a whole* constitute an intervening cause,[2] as Defendants rest their argument on Lately's violation of the ACDA statute serving as such. *See* Doc. 55, at 19 ("Lately's failure to adhere to assured clear distance, as required by R.C. 4511.21(A), breaks the chain of causation.").

Defendants rely on Ohio Second District Court of Appeals cases for the proposition that a plaintiff's ACDA violation constitutes an intervening act as a matter of law. *See Mitchell v. Kuchar*, 2005 WL 1707000, at ¶ 9–10 (Ohio Ct. App.); *Daniels v. Williamson*, 1997 WL 369325 (Ohio Ct. App.); *Didier v. Johns*, 114 Ohio App. 3d 746, 752–55 (1996). But the Second District subsequently walked back a broad reading of *Didier* and its progeny. *See Crosby v. Radenko*, 2011 WL 4124367, at ¶¶ 51–55 (Ohio Ct. App.) (holding *Didier* wrongly concluded "the fact that the plaintiff was negligent *per se* is conclusive of the issue of proximate cause"). Consistent with *Crosby*, the Ohio Supreme Court set the appropriate rule here. *See Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo*, 145 F.3d at 808). That is, even when a plaintiff's conduct constitutes negligence *per se*, it does not follow "that his negligence was the sole proximate cause, or even a proximate cause, of the collision that resulted" in the relevant injuries. *Smiddy v. Wedding Party, Inc.*, 30 Ohio St. 3d 35, 40 (1987).

Construing the evidence in a light most favorable to Plaintiffs, reasonable minds could disagree as to whether Ferrell's negligence, Lately's negligence, or some combination thereof constituted the proximate cause of Lately's injuries. *Pond*, 72 Ohio St. 3d at 53. As such, summary judgment is inappropriate on this basis.

---

2. Specifically, because Defendants did not raise the issue in their Motion, the Court will not *sua sponte* consider whether some combination of Lately's intoxication, excessive speed of travel, and alleged violation of the ACDA requirement constituted the sole proximate cause of his injures.

8

*Ferrell's Negligence* Per Se

Defendants' second argument as to Count One is that Plaintiffs' Complaint alleges Ferrell only violated "general provisions" of law that do not assert a "specific duty" sufficient to support a theory of negligence *per se*. *See Kooyman v. Staffco Constr., Inc.*, 189 Ohio App. 3d 48, 55–56 (2010). Plaintiffs raise two other statutes Ferrell allegedly violated in their opposition. (Doc. 45, at 17). Regardless of whether the cited statutes are sufficiently specific to support a negligence *per se* claim, summary judgment is improper.

Plaintiffs' Complaint does not rely solely on violations of applicable statutes and regulations to support their negligence claim against Ferrell. (Doc. 20, at 3–7). In fact, it contains numerous allegations that Ferrell breached a general duty of care untethered to a breach of a specific statutory duty. *See id.* at 5–6 (describing Ferrell's allegedly negligent acts such as "failing to keep a lookout" and "failing to ensure that it was safe to change lanes from the right lane to the left lane" in violation of a general duty to "operate his commercial motor vehicle safely and in accordance with Ohio law . . . and industry standards"). And drivers owe a duty of care to others on the roadway even absent some particular statute or regulation. *See, e.g.*, *Stoops v. Youngstown Suburban Transp. Co.*, 121 Ohio St. 437, 439–40 (recognizing a common law duty of ordinary care to other drivers on the highway). Plaintiffs introduced evidence sufficient to create a material issue of fact as to the reasonableness of Ferrell's operation of his truck independent of any specific statutory duty imposed on him. *See, e.g.*, Doc. 47-7, at 9–10 (concluding "it is more likely than not Defendant Ferrell did not look to his left for oncoming traffic before pulling out from the shoulder); Doc. 47-3, at 12–13 ("Mr. Ferrell made an unsafe lane change from the right (middle) lane into the far left lane, effectively blocking Mr. Lately's attempt to avoid the crash by changing lanes.").

9

There is a question of fact as to whether Ferrell breached the general duty of care he owed to Lately. Summary judgment on the question of Ferrell's negligence is therefore improper, and Defendants' Motion is denied as to Count One.

Counts Two & Four: Vicarious Liability & Loss of Consortium

Both Plaintiffs' second and fourth causes of action, for vicarious liability and loss of consortium respectively, are derivative claims that depend on a jury's determination of negligence.[3] *See Inskeep v. Columbus Zoological Park Ass'n*, 2023-Ohio-228, ¶ 36 (Ct. App.) (holding when genuine issues of material fact exist regarding negligence, summary judgment on a derivative claim is improper).

Defendants only challenge these claims on the grounds that Plaintiffs failed to establish Ferrell's own negligence. (Doc. 51, at 21–22). Because there is a triable issue of fact as to whether Ferrell acted negligently, the Court denies Defendants' Motion as to Counts Two and Four.

Count Three: Negligent Training and Supervision

Plaintiffs' third cause of action is an independent claim of negligent training or supervision against Defendant Silacal. To prevail on a claim for negligent training or supervision, Plaintiff must show: (1) an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) an act or omission by the employee causing the plaintiff's injuries; and (5) the employer's negligence in hiring, training, or retaining the employee were the proximate cause of those injuries. *Long v. KeltanBW, Inc.*, 2024-Ohio-2359, ¶ 42 (Ct. App.) (quoting *Francis v. Ne. Ohio Neighborhood Health Servs.*, 2021-Ohio-3928,

---

3. Plaintiffs rely on 49 C.F.R. § 390.5 for vicarious liability. Under this statute, Ferrell qualifies as a statutory employee of Silacal and Silical will be liable if Ferrell is found negligent.

¶ 23 (Ct. App.)). Defendants argue Plaintiffs fail to raise a genuine dispute of fact as to the second and third elements at issue here. (Doc. 51, at 21).

Under Ohio law, constructive knowledge is "knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Curtiss v. Charter Commc'ns, Inc.*, 2023 WL 6258257, at *6 (N.D. Ohio) (quoting *Herndon v. Torres*, 249 F. Supp. 3d 878, 887 (N.D. Ohio 2017)). While evidence of an employee's negligent act may create a triable issue as to that employee's incompetence, such evidence is alone insufficient to constitute evidence of an employer's actual or constructive knowledge of an employee's incompetence. *See Farm Bureau Gen. Ins. Co. v. Schneider Nat'l Carriers*, 552 F. Supp. 3d 750, 760–61 (S.D. Ohio 2021) ("Evidence of the employee's incompetent act giving rise to the underlying negligence claim is not alone sufficient to support a finding that an employer had actual or constructive knowledge of the incompetence prior to the incident.").

Plaintiffs offer no evidence tending to demonstrate that Silacal maintained actual or constructive knowledge of Ferrell's alleged incompetence. While they assert their "expert witness Adam Grill, an expert in trucking safety, concluded that Defendant Ferrell was not properly trained and supervised by Defendant Silacal[,]" Grill reached no such conclusion. *See* Doc. 54, at 19 (citing Doc. 47-1, at 28). Grill's expert report states only that "Silacal is responsible to train and supervise their professional drivers; namely Defendant Ferrell" and that "according to industry standards, this collision was preventable on the part of Silacal and Defendant Ferrell." (Doc. 47-1, at 28). Missing from these conclusions is a discussion of whether Silacal maintained actual or constructive knowledge of Ferrell's alleged incompetence. Moreover, Grill's report relies on the portion of Silacal President Krzysztof Karleszko's testimony addressing past violations by Silacal drivers generally. *Id.* at 16–21. Those general violations of driving safety standards, even taken as

11

true, do not evidence that Silacal was or should have been specifically on notice of Ferrell's alleged tortious propensity such that they could have provided him with greater training or supervision. *See Curtiss*, 2023 WL 6258257, at *6.

Next, Plaintiffs point to another expert, Seal's, conclusion that "Silacal, Inc. did not adequately train Mr. Ferrell in the . . . areas of driver safety" as grounds for demonstrating a genuine factual dispute. (Doc. 54, at 19) (citing Doc. 47-7, at 9). This portion of the report is likely an inadmissible legal conclusion but, even if it is not, Seal's report fails to establish a material issue of fact on this claim for the same reason as Grill's. *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 317–18 (6th Cir. 2019). Specifically, Seal's report does not purport to opine on whether Silacal maintained actual or constructive knowledge of Ferrell's incompetence such that it should have provided more training or supervision before the collision with Lately. (Doc. 47-7, at 8–9) (relying solely on Ferrell's actions on the night of the collision to determine Silacal failed to adequately train Ferrell).

Plaintiffs fail to offer affirmative evidence sufficient for a reasonable trier of fact to find that Silacal maintained actual or constructive knowledge of Ferrell's alleged incompetence before the events of June 27, 2021. As such, Plaintiffs' negligent training and supervision claim fails as a matter of law. The Court grants Defendants' motion for summary judgment as to Plaintiffs' third cause of action.

Count Five: Punitive Damages

Punitive damages are available on tort claims under Ohio law only when "the actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud, or that defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate." Ohio Rev. Code § 2315.21(C)(1). The Ohio Supreme Court

defines actual malice as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St. 3d 334, 334 (1987). It requires more than mere negligence. *Burns v. Prudential Sec., Inc.*, 167 Ohio App. 3d 809, 843 (2006). "The focus is on the actor's conscious disregard of an almost certain risk of substantial harm. This distinguishes 'malicious' from 'non-malicious' conduct." *Kuebler v. Gemini Transp.*, 2013 WL 6410608, at *5 (S.D. Ohio).

Because punitive damages are assessed as punishment and not for purposes of compensation, it is necessary that Defendants' conduct was "conscious, deliberate or intentional" and that Defendants' "possess[ed] knowledge of the harm that might be caused by [their] behavior." *Preston*, 32 Ohio St. 3d at 335. In the motor vehicle accident context, such actions that may be sufficient to award punitive damages "may include intoxication and deliberate actions to flee the scene or evade responsibility." *MacNeill v. Wyatt*, 917 F. Supp. 2d 726, 730 (S.D. Ohio 2013) (citing *Cabe v. Lunich*, 70 Ohio St. 3d 598, 602–03 (1994)); *Lyons v. Estes Express Lines, Inc.*, 2015 WL 3796384, at *2 (N.D. Ohio) (finding allegations of distracted driving alone do not support actual malice).

Plaintiffs argue that a reasonable trier of fact could find Ferrell acted with "malice" by manifesting a "conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." (Doc. 54, at 20) (quoting *Preston v. Murty*, 35 Ohio St. 3d 334, 336 (1987)). The only evidence offered to support such a finding is the same conduct underlying Plaintiffs' negligence action. *Id.* That is insufficient. Rather, "an award of punitive damages is not justified in a tort action unless there are 'aggravated circumstances apart from or

13

surrounding the injury or the actions of the party causing the injury.'" *MacNeill*, 917 F. Supp. 2d at 730 (quoting *Pelkowski v. Nussbaumer*, 1993 WL 50723, at *3 (Ohio Ct. App.)).

Plaintiffs also rely on Ferrell's decision to bypass a nearby rest area and stop on the shoulder to argue Ferrell knew he could not accelerate to a safe speed without a ramp, and thus demonstrated a conscious disregard for other motorists. (Doc. 54, at 20). Yet this is exactly the conduct cited for Plaintiffs' negligence claim, with no additional evidence to support a conscious disregard. *See* Doc. 20, at 3 (alleging as to Count One, for negligence against Ferrell, that Farrell acted negligently by passing a rest stop and instead opting to park on the shoulder of a construction zone to urinate, noting the issue of acceleration from said location); *see also id.* at 9–10 (restating the same facts and concluding that Defendants "acted with malice"). A finding of conscious disregard requires evidence the defendant subjectively knew the danger posed by his conduct. *See Estate of Schmidt*, 158 Ohio App. 3d at 740. Ferrell was not deposed, and Plaintiffs cannot point to any evidence regarding Ferrell's state of mind before the accident that demonstrates actual malice. *See Burns*, 167 Ohio App. 3d at 843 (finding negligence-based claim supports punitive damages only if plaintiffs adequately show actual malice). Plaintiffs offer no evidence of any above-mentioned aggravating factors.

"Courts have clearly held that a claim for punitive damages cannot survive if a plaintiff only requests such damages in a prayer for relief without supporting the pleading with factual content that, if proven, would warrant punitive damages." *Reber v. Lab Corp. of Am.*, 2015 WL 7076608, at *5 (S.D. Ohio) (citing *Flex Homes, Inc. v. Ritz-Craft Corp. of Mich., Inc.*, 721 F. Supp. 2d 663, 675–76 (N.D. Ohio 2010)). Where a plaintiff offers only conclusory allegations and not "any allegations concerning [the defendant's] mindset at the time of the accident," summary judgment for a defendant is appropriate on a punitive damages claim. *See Bonner v. Reliable*

14

*Transp. Specialists, Inc.,* 2018 WL 4586924, at *2 (N.D. Ohio). Stating a defendant acted with "conscious disregard" is simply a legal conclusion, and "[l]egal conclusions 'masquerading' as factual allegations are not sufficient." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

As a result, Plaintiffs' request for punitive damages fails as a matter of law and the Court grant's Defendant's Motion as to this request.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion for Summary Judgment be, and the same hereby is, GRANTED in part, as to Plaintiffs' claim for negligent training and supervision, as well as Plaintiffs' request for punitive damages, and is DENIED as to all other claims.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: September 24, 2025